Bryant v. Glidden.

---

BRYANT *versus* GLIDDEN *et al.*

The statute giving protection to mill-dams extends only to such streams as are *not navigable.*

A complaint, for flowing land by means of a mill dam, should therefore allege it to have been erected on a stream *not navigable.*

The omission of such an allegation should be taken advantage of before verdict, for the process being a civil suit, no motion in arrest of judgment can be allowed.

Though such a defect might have proved fatal, if seasonably objected to, it is not supposed a writ of *certiorari* would be granted, if, in point of fact, the stream was not a navigable one.

Upon the coming in of the commissioners' report, the case is to be tried by a jury in court, at the request of either party. Upon this trial, the report is to "be given in evidence, subject to be impeached by evidence from either party."

Until such report of the commissioners has been impeached by testimony, it is decisive of the parties' rights.

Such report can be impeached only for partiality, bias, prejudice or inattention or unfaithfulness in discharging the trust, or for error of such extraordinary character or grossness as should furnish a just inference of the existence of such influences.

The verdict of a jury, empaneled to try the case in court, after the commissioners' report has been returned, is defective, if it do not find the yearly damage; or if it do not find "what portion of the year the land ought not to be flowed," or if it assess, in one aggregate sum, the damage which accrued *before,* and also that which accrued *after* the complaint was filed.

Upon a verdict which finds neither the amount of "yearly damages," or "what portion of the year the land ought not to be flowed, no judgment can be rendered."

Notwithstanding such a verdict, a new trial must be granted.

A subsequent purchaser of the dam will be liable for the yearly damage upon the expiration of each year, reckoning not from the time of the verdict but from the filing of the complaint.

ON EXCEPTIONS from *Nisi Prius*, TENNEY, J., presiding.

COMPLAINT for flowing the complainant's land, by means of a mill-dam.

The complaint charges that for more than three years the respondents had raised to an increased height, and maintained at such height, a dam across the Damariscotta river, to raise a head of water necessary for working their water mill, thereby overflowing and injuring the meadow and marsh land of the complainant. The respondents pleaded the general issue, and also by brief statement, that they "have a right to maintain the dam described in the complaint, and to flow all lands that are thereby flowed, without any compensation." And also, by a second brief statement, that the said dam has been kept up and maintained for more than one hundred years, to the same height, at which it existed when the complaint was made, whereby the respondents have prescriptive right, &c. The verdict upon these issues was against the respondents.

Commissioners were then appointed, as prescribed by the statute. Their report referred to the Court the legal question in the alternative form, whether damages were to be assessed only for the flowing occasioned by the increased height of the dam or whether *all* the damages, occasioned by the dam, as it exists after having been increased in height, were to be assessed.

If the assessment is to extend only to the damages occasioned by the addition made to the original height of the dam, the commissioners report: —

1. That it is necessary for the profitable employment of the respondents' mill, that their dam should be maintained at its present height, and that they should have the privilege of flowing the complainant's meadow and marsh land, described in his complaint, during the whole of the year, except as hereinafter specified, and that no damage will be done to the complainant by such flowing.

2. That from the first day of June to the fifteenth day of September in each year, the complainant's land ought not to be flowed farther than it will be by keeping the water in the pond down to a certain iron bolt, designated as bolt A.

3. That no damage has been done to the complainant by the flowing of his lands described in his complaint so far as the flowing has been occasioned by the "increased height" of the respondents' dam.

If, in the opinion of the Court, the duty of the commissioners in the premises was to assess all the damages occasioned by the dam as it is, then the commissioners report: —

1. That it is necessary for the profitable employment of the respondents' mill, that their dam should be maintained to its present height, and that they should have the privilege of flowing the complainant's meadow and marsh land, described in his complaint, during the whole of the year, except as hereinafter specified, and that no damage will be done to the complainant by such flowing.

2. That from the first day of June to the first day of August in each year, the said land ought not to be flowed farther than it will be by keeping the water in the pond down to a certain iron bolt, designated as bolt B.

3. That from the first day of August to the fifteenth day of September, in each year, the complainant's said land ought not to be flowed farther than it will be by keeping the water in the pond down to a certain iron bolt, designated as bolt C.

4. That the yearly damage heretofore done to the complainant by the flowing of his said lands are as follows: —

For the year ending Sept. 1, 1846, nothing.
"     "     "     "     "     1, 1847, (twenty dollars) $20 00
"     "     "     "     "     1, 1848, ( "       " ) 20 00
"     "     "     "     "     1, 1849, ( "       " ) 20 00
"     "     "     "     "     1, 1850, ( "       " ) 20 00
"     "     "     "     "     1, 1851, ( fifteen " ) 15 00
"     "     "     "     "     1, 1852, ( "       " ) 15 00

Making in all the sum of one hundred and ten dollars. $110 00

The complainant, being dissatisfied with the report, requested that a jury should be empaneled to try the case at the bar of the Court.

At the trial before the jury, the report of the commissioners was introduced in evidence, with "a vast mass of other testimony."

The respondents requested the Judge to instruct the jury, 1st, that the report of the commissioners was conclusive, unless impeached by the complainant ; 2d, that the report of the commissioners is conclusive on the rights of the parties, unless in the judgment of the jury, it is impeached by the other evidence ; 3d, that in order to constitute such an impeachment, the jury must be satisfied, *either* that the said commissioners are censurable for their acts or omissions in relation to the report ; *or*, were guilty of some misconduct or partiality or undue bias or prejudice ; *or*, that they committed such gross error of judgment as would be evidence of such partiality, bias or prejudice ; *or*, that the complainant was deprived of a full, fair and impartial hearing by the proceedings of the commissioners. 4th, That the report is not impeached by evidence, tending merely to establish a result different from that of the report, and that the word "impeached" as used in the statute, means more than the word "contradicted."

These requested instructions the Judge refused to give, but he instructed *that*, as the report of the commissioners was before them, (it being admitted for the complainants that there was no fraud therein,) they would be authorized to presume, in the absence of evidence to the contrary, that it was the result of an investigation on the spot, honestly and thoroughly made ; *that* it was evidence of an important character, but was only evidence and not conclusive ; *that* they probably would regard it as true, until shown to be erroneous ; *that*, if there was evidence of error, they would weigh that evidence, and when weighed, if satisfied the report was erroneous, so far they would not be bound by it ; and *that* the report and all the other evidence *were to be regarded as facts for their consideration.*

The ruling of the Judge upon the legal question submitted in the alternative form by the referees, need not here be presented, as the full Court expressed no opinion upon that question.

The jury returned a verdict, that the complainant has been damaged by the respondents' dam, in manner and form as he has alleged, and they assessed damages for the complainant in the sum of two hundred and fifty dollars.

In 1846, no damages.

| | | |
|---|---|---|
| " 1847, | " | $75 00 |
| " 1848, | " | 75 00 |
| " 1849, | " | 40 00 |
| " 1850, | " | 20 00 |
| " 1851, | " | 20 00 |
| " 1852, | " | 20 00 |
| | | $250 00 |

They also found that the water may remain as high as the bolt A, during the whole year, except that from the first day of June to the fifteenth day of July, the water should be no higher than the bolt B, and from the fifteenth of July to the fifteenth of September the water should be no higher than bolt C.

To the rulings of the Judge and to his refusals to give the requested instructions, the respondents excepted.

*Evans* and *Tallman,* in support of the exceptions.

1. The statute extends to mill owners no protection for erecting dams, except upon streams that are not navigable. It is not alleged in the complaint, that this stream is not navigable. For flowing lands by a dam on a stream that is navigable, the damages are recoverable only at the common law, and not by a complaint of this kind. The proceedings, thus far, have, therefore, been merely void; the defect not having been cured by the verdict. The Court had no jurisdiction, and, therefore, it is not too late to take the objection, and the proceedings will be stayed. *Farrington* v. *Bliss,* 14 Maine, 423; *Eddy's* case, 4 Cush. 28; 3 Johnson's Cases, 107;

Bryant *v.* Glidden.

*Barnard* v. *Fitch*, 7 Metc. 605; *White* v. *Riggs*, 27 Maine, 114.

True, the statute of Maine allows no arrest of judgment in civil suits, but this is not a motion in arrest of judgment. A judgment, if rendered on such a complaint, would be reversible on *certiorari*, and therefore the proceedings may, on suggestion, be stayed or dismissed in any stage.

2. The instructions, which we requested, as to the force and effect of the commissioners' report ought to have been given. 11 Pick. 359 ; 11 Metc. 297.

*Ruggles*, for plaintiff. 1st. The motion to dismiss or to stay proceedings is without foundation. Proceedings by complaint are not restricted to rivers not navigable. The statute on which the process is founded, c. 126, § 5, gives remedy *by complaint* to *any person*, sustaining damages in his lands, by their being overflowed by a mill-dam.

But, if so restricted, and if the river was navigable, that fact would be merely matter in defence. The character of the river need not be alleged in the complaint.

If, however, such an allegation be nesessary, it was but matter of form, and is cured by the verdict ; and if it be matter of substance, the defect is cured by the respondents' brief statements, 1st, that they " have a right to maintain said dam, described in said complaint, and to flow all lands that are thereby flowed, without any compensation ; thus, even on their own construction, furnishing a resistless implication that the stream was not a navigable one, *Stark* v. *Lyon*, 9 Pick. 62; and 2d, that they had a prescriptive right for a user of more than one hundred years. The complainants do not deny the length of user of the dam, but claim for an increase in its height. But, if the stream was a navigable one, no prescriptive right of flowing could arise.

2. The motion to dismiss, if at all allowable, cannot be made in the full Court. It belonged to the *Nisi Prius* term, in Lincoln county.

3. A motion of this kind is not allowable after the verdict. It is equivalent to a motion in arrest. But in civil suits such

motions are prohibited by statute, and this is a civil suit. To call it a motion to dismiss or to stay proceedings, and not a motion in arrest, is deceptive.

The respondents' exceptions are in substance that the commissioners' report is to be held decisive, unless impeached for fraud or some censurable conduct on their part; and the Judge at the trial refused so to instruct the jury.

Such new interpretation cannot prevail. The statute does not give, nor did it intend to give, to the report, any higher character than that of "evidence," liable to be impeached as any other evidence may be.

But a decisive answer to the new interpretation is that it is violative of the constitutional right of trial by jury. Constitution, Art. 1, § 20; *Burrill* v. *Marston*, 12 Maine, 354; *Cowell* v. *G. F. Manufacturing Co.*, 6 Maine, 282.

The respondents contend that the report was impeachable only for misconduct by the commissioners. But whether the Judge's refusal so to instruct was correct or not, is quite immaterial in this case, inasmuch as the jury found it *was impeached* as to the amount of damage. Therefore, from the withholding of the requested instructions, no injury could result to the respondents.

There was a motion by the respondents for a new trial. It was argued at the same time with the exceptions. Upon that motion, the respondents contended that the verdict was so defective that no judgment could be entered upon it.

1st, Because it does not find whether the dam was necessary for the raising of a head of water, for driving the mill.

2d, Because it does not find what portion of the year the land ought not to be flowed.

3d, Because it does not find what is the amount of the yearly damages, subsequent to the filing of the complaint.

SHEPLEY, C. J. — This process was commenced to recover damages alleged to have been occasioned to the complainant's land by the respondents' mill-dam. A former verdict decided,

that the respondents had not a right to flow it without being liable to damages, if any were occasioned by an increased height of the dam. Commissioners were subsequently appointed to ascertain the amount of damages, if any, and to decide upon the other matters required by the statute. Their report having been made and not proving to be satisfactory to the complainant, he requested, that a jury might be impaneled to try the cause at the bar of the Court. The case is now presented after a verdict of that jury has been received.

For the respondents it is alleged, *that* the *complaint* is too defective to authorize any judgment to be entered upon it; — *that* the *verdict* is so defective, that no judgment can be entered upon it; and *that* it was found under erroneous instructions.

The complaint does not allege, that the dam was erected across a stream of water not navigable. The first section of the statute, c. 126, authorizes the erection of dams across streams not navigable, to raise water for working mills. It was not the intention to authorize at the pleasure of individuals the erection of such dams across navigable streams, thereby obstructing their navigation. Such right could only be obtained by a special Act of the Legislature, which reserved to itself the right to judge of the expediency of permitting it. If it had not done so, any person might obstruct the free use of navigable waters.

The language used in the fifth section is unlimited, providing, " that any person sustaining damages in his lands by their being overflowed by a mill-dam may obtain compensation for the injury by complaint;" but this must be considered in connection with other provisions of the statute, which clearly was not designed to afford this remedy and to protect a dam from removal as a nuisance and to decide upon the manner, in which it should be used, when it could have no legal existence. The whole proceedings have reference to claims authorized by the statute and not to claims not authorized by it. The statute was not designed to make an illegal act valid.

If a plea, alleging that the respondents had a legal right to maintain such a dam, could cure the defect in the complaint, the parties to such proceedings might cause a dam to have a legal existence without any law authorizing it, and might require the judicial department to entertain such proceedings and put the State to the expense of regulating a public nuisance.

It might have been the duty of the Court to have quashed these proceedings upon motion made before verdict, but the Legislature of this State has provided, that no motion in arrest of judgment shall be sustained in any civil action.

The words "civil action," as used in the statutes, include all legal proceedings partaking of the nature of a suit and designed to determine the rights of private parties. The Court cannot therefore refuse to enter up a judgment on account of this defect. As the testimony shows, that the dam was not in fact erected across a stream where it was navigable, there is no reason to conclude, that the proceedings can be rendered ineffectual by a writ of *certiorari.*

A like construction of a similar statute respecting the erection of dams appears to have been made in the case of *Cogswell* v. *Essex Mill Corporation*, 6 Pick. 94.

The verdict returned by the jury is very defective. No yearly damages are found. Nor is there any finding of "what portion of the year such lands ought not to be flowed." The verdict states from what time to what time the water should be no higher than to certain bolts designated; but this does not substantially determine what portion of the year the lands ought not to be flowed, for it does not appear, whether the lands would or would not be flowed by such regulated height of the water. Damages occasioned before and after the complaint was filed are assessed in one aggregate sum. The whole matter in issue is not found; and part is irregularly and incorrectly found.

It is said, that the omission to find any yearly damages may be regarded as equivalent to a finding, that there would be no damages in future. It is doubtful, whether a subsequent purchaser would be bound by any such constructive

finding. He might be entitled to have his rights regulated according to the provisions of the statute and to have a right to petition for an increase of damages or to maintain a new process. A verdict of a jury or an accepted report of commissioners made in conformity to the provisions of the statute is alone declared to be a bar to an action.

The damages occasioned for three years before the complaint is filed may be assessed in one aggregate sum. The subsequent damages are to be " yearly damages," for the recovery of which the owner of the land has a lien " from the time of the institution of the original complaint on the mill and mill-dam." These damages cannot be found to be different in different years and be incorporated with those occasioned before the complaint was filed, as appears to have been done in this case. This course would deprive the owner of the land of his lien and other parties of rights secured to them by the statute. When yearly damages are found, the time of their commencement is determined by " the institution of the original complaint," and not by the time of finding the verdict. A subsequent purchaser of the dam and mill is liable for the year's damages becoming payable after his purchase. *Lowell* v. *Shaw,* 15 Maine, 242. If other than yearly damages were found to the time of the verdict, and yearly damages were subsequently found, the effect might be, that the complainant might recover damages twice for part of a year.

In the case of *Commonwealth* v. *Ellis,* 11 Mass. 462, the Court directed, that execution should issue for a collection of the yearly damages to the time of finding the verdict. There was no assessment of any other than yearly damages. The complaint appears to have been filed at January term, 1806, and execution to have issued for damages to the 25th of September, 1807, when there could have been no number of complete years between those times. The case affords no sanction to a finding of any other than yearly damages subsequent to the filing of the complaint.

By the provisions of the fifteenth section, the owner or

occupant of the dam is forbidden to flow the lands during any portion of the time, when he is not allowed to do so by the report of the commissioners or verdict of the jury. Without any finding of such time this provision of the statute becomes ineffectual.

Although the question was not directly presented for decision, the Court expressed an opinion in the case of *Cogswell* v. *Essex Mill Corporation,* that "a jury once empaneled under that statute would be obliged to assess yearly damages, to limit the height of the dam, and to fix the time when it is not necessary to flow the lands at all. The jury is obliged under oath to perform these duties, and any verdict, which should show that they had neglected them, would be void."

On account of the defects already stated, the verdict in this case must be set aside, and a new trial must be granted.

As the report of the commissioners must again be presented, it will be important to consider its effect, that future instructions respecting it may be correct.

The statute provides that it shall be given in evidence to the jury, "subject to be impeached by evidence from either party."

The report states only, and it can only properly state, conclusions; and not the information obtained by personal examination and by testimony, on which those conclusions were based. If it were to have no other effect than the like testimony from others, it could have but little influence. It would exhibit merely the opinions of three intelligent persons, without any facts to sustain their opinions or to prove them to have been correct. It could not be expected to have as much weight as the testimony of the same persons, if examined as witnesses, for they could state, as witnesses, what they found to be true by examination, while they could not be permitted to relate the testimony received from others. If it were to be regarded merely as evidence; that is, as an opinion of those persons made evidence by the statute, the expensive proceedings to procure that opinion would be rendered almost useless, and the provisions of the statute requiring the appointment o commissioners would become burdensome and oppressive to

the parties, without the assurance of any essential benefit. It is but reasonable to conclude, that it could not have been the intention to cause so much delay, expense and trouble to so little purpose. The language used repels a contrary conclusion. It implies that the report is to be decisive of the rights of the parties, until its decisive effect is removed by its being impeached by evidence.

To impeach, as applied to a person, is to accuse, to blame, to censure him. It includes the imputation of wrong doing. To impeach his official report or conduct is to show that it was occasioned by some partiality, bias, prejudice, inattention to, or unfaithfulness in, the discharge of that duty; or, that it was based upon such error that the existence of such influences may be justly inferred from the extraordinary character or grossness of that error.

The word can have no less forcible meaning as used in the statute, without considering it to have required proceedings suited to occasion much delay, expense and trouble, without any important purpose or result.

*Verdict set aside, and*
*New trial granted.*

HOWARD and HATHAWAY, J. J., concurred.

WELLS and RICE, J. J., concurred in the result.

